## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL NO. 1:25-cv-00037-MR-WCM

| | |
|---|---|
| **EARL KRATZER, on behalf of and as next friend of M.K., a minor,** ) ) ) | |
| **Plaintiff,** ) ) | |
| **vs.** ) ) | **ORDER APPROVING MINOR SETTLEMENT** |
| **STEPHEN FISHER, individually and in his official capacity as the Superintendent of Cleveland County Schools,** *et al.*, ) ) ) ) ) ) | |
| **Defendants.** ) ) | |

**THIS MATTER** is before the Court on the parties' Joint Motion to Approve Settlement Agreement [Doc. 14].

## BACKGROUND

This First Amendment action was brought on February 5, 2025, after employees of a school system prevented a high school junior, M.K., from presenting "LGBTQ+ Representation Jeopardy!" to her school's Activism Club.[1]  [Doc. 14 at ¶ 1].  After members of the Cleveland County Board of

---

[1] M.K.'s game featured prominent members of, and influential media pertaining to, the LGBTQ+ community.  For example, in a category "2000's Icons," M.K. formulated a $200 clue "[s]he is married to Portia de Rossi and was the voice of Dory in Finding Nemo" and the corresponding answer "Ellen DeGeneres."  [Doc. 1-1 at 15, 16].

Education and the Superintendent of the Cleveland County School System (collectively, the "Defendants") prohibited M.K. from presenting the game, M.K.'s father ("Mr. Kratzer"),[2] filed the instant lawsuit against the Defendants seeking injunctive relief, nominal damages, and attorneys' fees for alleged violations of the First Amendment of the United States Constitution; the Equal Access Act, 20 U.S.C. § 4071; and Article I, Section 14 of the North Carolina Constitution. [Doc. 1].

On February 20, 2025, Mr. Kratzer filed a Motion for Preliminary Injunction asking the Court to require the "Defendants to cease prohibiting [M.K.] from sharing" her game. [Doc. 3]. The Defendants never filed a response to Mr. Kratzer's Motion for Preliminary Injunction. Instead, on March 14, 2025, the parties filed a Joint Motion to Stay Proceedings, explaining that the parties had "agreed upon terms to resolve this lawsuit and are reviewing a draft settlement agreement." [Doc. 12]. On March 17, 2025, the Court issued an Order staying this lawsuit. [Doc. 13].

On April 2, 2025, the parties filed the present Joint Motion to Approve Settlement Agreement. [Doc. 14]. On April 24, 2025, this matter came on for final hearing before the Court. Present for the proceeding were attorneys

---

[2] This action was filed by M.K.'s father and next of friend, Mr. Kratzer, on behalf of M.K. [See Doc. 1].

Ivy A. Johnson and Daniel K. Siegel of the American Civil Liberties Union of North Carolina ("ACLU"), and Charles E. Johnson of Robinson, Bradshaw and Hinson ("Robinson Bradshaw"), as counsel for Mr. Kratzer; Ashley F. Leonard of Campbell Shatley PLLC as counsel for the Defendants; and Mr. Kratzer, as the parent and next of friend for the minor M.K. Prior to the hearing, the Court reviewed the following documents with respect to the Parties' Joint Motion to Approve Settlement Agreement: (1) Settlement Agreement and Release of all Claims (the "Settlement and Release") [Doc. 14-2]; (2) Declaration of Earl Kratzer [Doc. 14-3]; (3) Declaration of Charles E. Johnson [Doc. 14-4]; and (4) Declaration of Daniel Siegel [Doc. 14-5].

## FINDINGS OF FACT

1. To assess the reasonableness of the Settlement and Release, at the hearing on April 24, 2025, the Court requested that counsel for Mr. Kratzer and the Defendants provide a candid evaluation of the strengths and weaknesses of Mr. Kratzer's claims and any defenses thereto. The parties complied with the Court's request and proffered the following details surrounding the factual and legal circumstances of this matter.

2. Mr. Kratzer's counsel first provided background information regarding alleged facts that led to this lawsuit. Counsel explained that M.K. founded the Activism Club during her freshman year of high school. Since

3

then, the club has met during the school's flex period to discuss various topics, including the Black Lives Matter movement, women's rights, and the war in Gaza (which required signed parental permission forms for students to participate). While a student advisor monitors club meetings, discussion is entirely student led.

3. M.K. first presented LGBTQ+ Representation Jeopardy! to her student advisor in April of 2024. The club had played various games in the past, but LGBTQ+ Representation Jeopardy! is the first Jeopardy! style game the club intended to play. M.K. created the game to highlight and share the accomplishments of members of the LGBTQ+ community. M.K.'s efforts were thwarted, though, when M.K. was repeatedly told by Cleveland County Schools employees that the Activism Club could not play the game on school grounds. Cleveland County Schools employees feared that the game implicated North Carolina's "Parents' Bill of Rights" law, and that the game contained vulgar and offensive speech.

4. As for the strengths and weaknesses of Mr. Kratzer's claims, counsel stated that M.K.'s game does not contain references to sexual acts, and that the game contains accurate information. Further, counsel asserted that the present lawsuit did not implicate North Carolina's "Parents' Bill of Rights" law. Counsel believed that Mr. Kratzer presented a strong First

4

Amendment claim because (1) the Defendants never suggested that the game caused fear of apprehension or disruption, (2) the game was not vulgar or offensive, and (3) M.K.'s game constituted student speech. Mr. Kratzer's counsel pointed out that the only information contained in the game that the Defendants could point to as disruptive is a reference to cigarettes contained in song lyrics. Regarding Mr. Kratzer's Equal Access Act claim, Mr. Kratzer's counsel represented that no other groups at M.K.'s school required permission slips to conduct meetings, but conceded that other groups did not discuss sensitive topics like those discussed by the Activism Club.

6. Mr. Kratzer's counsel represented that she believed the requested remedy—that is, that M.K. be allowed to present the game to those in the Activism Club who obtain signed parental permission slips, and that the school apologize for prohibiting M.K. from playing the game—is a reasonable one.

7. Counsel for the Defendants represented to the Court that, had the parties not agreed to settle the case, the Defendants would have moved to dismiss the case on mootness grounds because the Defendants eventually offered to allow M.K. to play the game. The Defendants would have also argued that the claim against the Superintendent of Cleveland County Schools in his individual capacity should be dismissed based on

5

qualified immunity, asserting that M.K.'s freedom of speech right was not clearly established at the time of the suit. Counsel for the Defendants further represented that, in response to Mr. Kratzer's First Amendment claim, the Defendants would have argued that they have the ability to maintain order and discipline on school grounds. The Defendants conceded, though, that this argument is weak, and that the Settlement and Release is a more efficient manner to resolve this case.

8.    In response to the Defendants' projected mootness argument, Mr. Kratzer's counsel stated that the Defendants did not offer for M.K. to play the game until settlement negotiations were underway. Mr. Kratzer's counsel also asserted that Mr. Kratzer pleaded nominal damages, so the case would not have been fully resolved by the Defendants allowing M.K. to play the game.

9.    After the parties forecast the strengths and weaknesses of Mr. Kratzer's claims and any defenses thereto, the Court addressed the agreed upon attorneys' fees contained in the Settlement and Release. Before the hearing, the Court reviewed the documents and justifications for the agreed upon attorneys' fees, including the Declarations of Attorneys Charles Johnson and Daniel Siegel [Docs. 14-4, 14-5]. At the hearing, the Court inquired into the calculation and justification for requesting such fees. In so

6

inquiring, the Court noted that this case concluded rather quickly, and that, in his Declaration, Daniel Siegel presented a scant justification for the ACLU attorneys' requested fees of $22,500.00.

10.   Mr. Kratzer's ACLU attorneys responded by pointing out that Charles Johnson's law firm, Robinson Bradshaw, had waived its fees accumulated in this case.  Mr. Kratzer's ACLU counsel further represented that they began working on this case in November of 2024, when the attorneys began investigating the facts to prepare a Demand Letter, which was sent on December 4, 2024.  Counsel further represented that the ACLU attorneys use a system in which its lawyers keep track of their time and assess their hourly rates, which counsel stated is a blended rate of $375 per hour.  Counsel also stated that the two ACLU lawyers worked a combined 130 hours in this case investigating, preparing the Complaint and a motion for preliminary injunction, meeting with their client, and negotiating a settlement; yet, counsel only requested $22,500.00—less than half of the amount counsel would normally charge for the hours worked.  The Defendant offered no response to Mr. Kratzer's counsel's discussion regarding fees.

11.   The Court then inquired as to the reasonableness of certain indemnity clauses found in the Settlement and Release.  These clauses purport to indemnify the Defendants of taxes, penalties, interest, costs,

7

expenses, and losses, among other things, that the Defendants might incur on any amount paid to M.K., including attorneys' fees, and resulting from claims brought by M.K. against released parties. [Doc. 14-2 at 2 ¶ 3, 3 ¶ 8]. Specifically, the Court inquired into whether it was reasonable to bind M.K. to these indemnity clauses. Mr. Kratzer's counsel candidly replied that the clauses were not reasonable. The Defendants' counsel represented to the Court that the Defendants would not pursue such payment from the minor child.

12.     At the hearing held on April 24, 2025, Mr. Kratzer, as the natural parent and next of friend to M.K., acknowledged that he:

(a)     Had read the settlement documents filed in this matter, including the Settlement and Release, and that he understands and assents to the terms thereof.

(b)     Had an adequate opportunity to confer with counsel regarding his decision to settle this matter.

(c)     Believes, in his capacity as parent of M.K., that the proposed settlement is fair and reasonable for M.K. under the circumstances of this case, particularly as to the nature of the settlement.

(d)     Believes the attorneys' fees are fair in light of the time the attorneys spent on the case and the assistance the attorneys provided.

8

(e)     Was present in the courtroom and able to hear all of the arguments and statements from the attorneys, as well as inquiries from the Court, and had no further questions regarding the Settlement and Release.

(f)     Understands that, if the Court approves the Settlement and Release, the provision of the consideration for the settlement by the Defendants will terminate any claims of M.K. against the Defendants.  He further acknowledged that he understands that his decision to accept the Settlement and Release on behalf of M.K. (if such agreement is approved by the Court) will bind M.K., and M.K. will be enjoined from seeking any future redress against the Defendants, pursuant to the Settlement and Release, based upon the acts and omissions alleged in the Complaint.

13.     This being chiefly an action for equitable relief, there was no expectation of damages other than nominal damages and, therefore, any absence of insurance coverage is not a factor in evaluating the settlement in this case.

14.     The Court finds that the attorneys' fees requested by Mr. Kratzer's counsel are fair and reasonable upon considering the factors outlined by In re Abrams & Abrams, P.A., 605 F.3d 238, 244 (4th Cir. 2010), including the skill of the work performed and the degree of success obtained for M.K.  While the case was settled in the early stages of litigation, counsel

9

was required to allocate time investigating and drafting a Complaint, and more time preparing a motion for preliminary injunction. Additionally, the Court notes that attorney Charles E. Johnson waived any fees accumulated by his firm in this matter, and the amount requested by attorneys Daniel K. Siegel and Ivy Johnson represents less than half of the fee they would normally charge for the time spent in this case. Finally, by settling this matter before the summary judgment stage, counsel did not incur additional costs in briefing such motions and preparing the matter for trial.

15.     Based on all the foregoing, the Court finds that the Settlement and Release is fair and reasonable under all of the circumstances of this case, and that the consideration to be provided under the terms of that Settlement and Release is fair and reasonable.

## CONCLUSIONS OF LAW

**WHEREFORE,** based upon the foregoing findings of fact, the Court concludes as a matter of law that:

1.     The objective of the Settlement and Release—that is, M.K. being allowed to present LGBTQ+ Representation Jeopardy! during an Activism Club meeting—is a reasonable one.

10

2.     Considering the work done, the time spent, and the calculation of the rate, the attorneys' fees agreed upon in the Settlement and Release are reasonable.

3.     Based on the representations made by the parties at the April 24, 2025 hearing, the indemnity provisions contained in the Settlement and Release [see Doc. 14-2 at 2 ¶ 3, 3 ¶ 8] are not an inhibitor to the Settlement and Release being reasonable.

4.     Mr. Kratzer, acting in his capacity as parent and next of friend for M.K., is competent in all respects and is able to understand the ramifications of the Settlement and Release, as well as the effect such agreement would have upon M.K., and is competent and able to execute his duties accordingly.

5.     Mr. Kratzer, acting in his capacity as parent and next of friend of M.K., has bound M.K. in the same manner as if such minor had consented to the settlement as an adult.

6.     Having reviewed the Settlement and Release, the Court finds that the extent and nature of recovery for M.K. are both fair and reasonable, and the relief as provided in the Settlement and Release is in the best interests of M.K.

7.     The Settlement and Release should be approved.

## ORDER

**IT IS, THEREFORE, ORDERED** that the parties' Joint Motion to Approve Settlement Agreement [Doc. 14] is **GRANTED**, and the parties' Settlement Agreement and Release of all Claims [Doc. 14-2] is hereby **APPROVED**.

**IT IS FURTHER ORDERED** that the parties shall file a stipulation of dismissal with respect to all the Plaintiff's claims against the Defendants within thirty (30) days of the entry of this Order.

**IT IS SO ORDERED.**

Signed: May 8, 2025

Martin Reidinger
Chief United States District Judge